**RECEIVED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR 0 1 2015

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

OMAR AGUILAR

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

15-cv-02952
Judge Sara L Ellis
Magistrate Judge Susan E Cox
PC7

vs.

Salvador Godinez, Michael
Lemke, Charles Best, Officer
C. Milsap, R. Tejeda, Anna
McBee, Sherry Benton

_____

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No:_____

(To be supplied by the Clerk of this Court)

CHECK ONE ONLY:

✓ COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code (state, county, or municipal defendants)

_____ COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code (federal defendants)

_____ OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. **Plaintiff(s):**

A. Name: _Omar Aguilar_

B. List all aliases: _N/A_

C. Prisoner identification number: _M20779_

D. Place of present confinement: _Stateville C.C._

E. Address: _Route 53, P.O. Box 112, Joliet, Illinois 60434_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: _Salvador Godinez_

Title: _Director_

Place of Employment: _Illinois Department of Corrections_

B. Defendant: _Michael Lemke_

Title: _Warden_

Place of Employment: _Stateville C.C._

C. Defendant: _Charles Best_

Title: _Adjustment Committee Chairperson (Lieutenant)_

Place of Employment: _Stateville C.C._

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

_See Attached Page For Additional Defendants_

ADDITIONAL DEFENDANTS

4. DEFENDANT: C. MILSAP
   TITLE: OFFICER (INTERNAL AFFAIRS)
   Place of Employment: STATEVILLE C.C.

5. DEFENDANT: R. TEJEDA
   TITLE: OFFICER (INTERNAL AFFAIRS)
   Place of Employment: STATEVILLE C.C.

6. DEFENDANT: ANNA MCBEE
   TITLE: GRIEVANCE OFFICER
   Place of Employment: STATEVILLE C.C.

7. DEFENDANT: SHERRY BENTON
   TITLE: ADMINISTRATIVE REVIEW BOARD CHAIRPERSON
   Place of Employment: ILLINOIS DEPARTMENT OF CORRECTIONS

   PLAINTIFF BRINGS HIS CLAIM UNDER TO COLOR OF
LAW, IN VIOLATION OF HIS FIRST, EIGHTH AND FOURTEENTH
AMENDMENT OF ~~THE~~ UNITED STATES CONSTITUTION.

## IV. JURISDICTION & VENUE

(1) THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C. SECTION 1983
TO REDRESS THE DEPRIVATION, UNDER COLOR OF STATE LAW, OF
RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES, THE COURT
HAS JURISDICTION UNDER 28 U.S.C. SECTION 1331 AND 1343 (a)(3).

(2). THE NORTHERN DISTRICT OF ILLINOIS IS AN APPROPRIATE
VENUE UNDER 28 U.S.C. SECTION 1391 (b)(2) BECAUSE IT IS
WHERE THE EVENTS GIVING RISE TO THIS CLAIM OCCURRED.

**III.** **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: _____ N/A _____

B.   Approximate date of filing lawsuit: _____ N/A _____

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: _____ N/A _____

D.   List all defendants: _____ N/A _____

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____ N/A _____

F.   Name of judge to whom case was assigned: _____ N/A _____

G.   Basic claim made: _____ N/A _____

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____ N/A _____

I.   Approximate date of disposition: _____ N/A _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

3

Revised 9/2007

**IV.** **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

See Attached Pages

4

Revised 9/2007

# Statement of Claim:

1. Plaintiff is an inmate housed at the Stateville Correctional Center a maximum security prison

2. Defendants abused their positions in their pursuit of finding someone to blame for the rule infraction.

3. Defendants had no evidence but they charged & convicted plaintiff of breaking the rules.

4. The rules of due process have to be followed in order for the constitutional rights of the inmates to be protected.

5. Plaintiff's due process rights were violated; as a direct result of his due process rights being violated he was subjected to unnecessary suffering in violation of his 8th Amendment rights.

6. On February 15, 2013 plaintiff was placed in investigative status which is temperary confinement while the internal affairs unit & its officers investigate the incident to see if they can come up with evidence linking plaintiff to the incident.

7. An investigation status can only last for 30 days, unless an extention is requested by the Internal Affairs unit & its officers.

8. If an extention is requested then plaintiff must be informed in writing or in person.

9. An extention can not be obtained without a request or without the Chief Administrative officer's approval.

10. Plaintiff was placed in investigative status on 2/15/13 & As per the rules he should have been finished with the investigation on 3/15/13. (Exhibit-A)

11. Once the investigation has concluded plaintiff should either be released from temperary confinement because the evidence showed that he hadn't done any wrong doing, or he should be written a Displinary Ticket because the evidence showed that the incident was committed by the plaintiff.

12. This wasn't what was done by defendants in the case of plaintiff. In direct violation of the rules of due process.

13. Plaintiff's Investigation lasted from 2/15/13 - 3/15/13; which is 30 days But the Internal Affairs Division & Defendant R. Tejeda didn't write the disciplinary ticket until 3/18/13 (three (3) Days later)

& Plaintiff wasn't released from confinement while defendants took (3) days to write their other ticket & As a direct result plaintiff's due process rights were violated. (Exhibit-B)

14. The Internal Affairs unit, C. Milsap & R. Tejeda all knew that the ticket that was originally written (Exhibit-A) on plaintiff was devoid of any physical evidence that linked plaintiff to any wrong doing & they were searching for evidence.

15. Defendants Internal Affairs unit, Milsap & Tejeda had no evidence that showed them that plaintiff was in any way involved with the alleged incident & thats why he was placed under investigation, but after their investigation into plaintiff's involvement they still had nothing that show them or prove to them that plaintiff was guilty of anything wrong.

16. Defendants I.A. unit, Milsap & Tejeda asked plaintiff if he would submit to a lie detector test about an 8½ inch metal rod that was found in a plumber's access area between two cells E-House cell 711 & B-House 811.

17. Plaintiff agreed to take the voice-stress-analyzer & he was asked (4) questions concerning the 8½ metal rod.

5

18. Plaintiff was asked #1 "Did he see his cellmate sharpen the metal rod?". Plaintiff answered No & it concluded he was being truthful.

19. Plaintiff was asked #2 - Did he sharpen the metal on the bed? He answered No & it concluded he was being truthful.

20. Plaintiff was asked #3 - Did he place the metal in the area? He replied No & it concluded he was being deceptive.

21. Plaintiff was asked #4 - Was the metal his? Plaintiff replied No & it concluded he was being deceptive.

22. Defendants I.A unit, Milsap, & Tejeda based there assumption of plaintiff being guilty on the responses that he gave to the questions that they asked him pertaining to the sharpend metal rod that they found in an area that plaintiff doesn't have access to, that was between two (2) cells.

23. Defendants I.A unit, Milsap & Tejeda wrote plaintiff a disciplinary ticket (exhibit-B) due to plaintiff's VSA results, they concluded plaintiff was being deceptive on questions 3 & 4 of the VSA & that those results substantiated that plaintiff violated the following DR 504 offenses: 104 dangerous contraband & 303 giving

le.

FALSE INFORMATION TO AN EMPLOYEE.

24. DEFENDANTS I-A unit, MILSAP & TEJEDA Aren't stating that Plaintiff Took Responsibility for the METAL Rod or that he was found to be in sole possession of the METAL Rod, or that someone said that the METAL Rod belonged to Plaintiff, But that as a Result of his Answers to VSA-Polygraph questions It was Concluded that the METAL was Plaintiff's & that he had lied to them.

25. Neither Charge Can be substantiated By the answers that he gave at the VSA Questioning Because No actual or physical evidence exists that points to plaintiff.

26. There was (3) other suspects that Defendants I-A unit, MilSAP & TEJEDA placed under investigation for Allegedly having The METAL Rod & Just from the Answers he gave Plaintiff was Deemed To have been The owner of the METAL & That doesn't make Sense.

27. Defendants I-A unit, MilSAP & TEJEDA have a Responsibility To investigate & look into incidents Thoroughly & Not write fraudulent disciplinary tickets like they have done. Each Charge Is suppose to be substantiated with some evidence, But in the Case of plaintiff... NONE has been shown to exist. Under Department Policies Rules and Regulation 504Dr, Violating Due Process 14th Amend Const.

7.

28. On March 29, 2013 Plaintiff Heard His Disciplinary Ticket At The Adjustment Committee Hearing Chaired By LT. Charles F. Best.

29. Defendant Best is Known To The inmate population As "Bar B-Q Best" Because His Track Record with finding inmates Guilty No matter what They say or do, The Officer is always Right. In this chair persons eyes. Making Him Bias And Unable To Give Inmate's A Fair And Impartial Adjustment Committee Hearing.

30. Defendant Best Read The Ticket That Had Been Written By The I-A Unit, Milsap & Tejeda & Made The Determination That Plaintiff Was Guilty of The Listed Charges Based on His Responses To The USA Questions. This Was Prejudice To Plaintiff, Denying Plaintiff A Fair And Impartial Accessment of Incident And Charges of What Plaintiff Was Actually Accused Of.

31. Plaintiff Made it Known at this time That The Ticket Had Been Written Outside of The 30 Day Timeframe Deadline for Investigation Status That He Can Be Held. Defendant Best Told Plaintiff He Wasn't Trying To Hear That & With That He Didn't Look into Plaintiff's Claim of Procedural Due Process Violations By The Defendants I-A Unit, Milsap & Tejeda With How They Wrote His Ticket.

32. Defendant Best Made His Decision Based on The Nature of The Offense. Thats What He Stated In The Area of The Final Summary Report (Exhibit-C) Titled: Basis for Discipline.

8.

33. Defendant Best Wrote That His Basis for The discipline That He was imposing/Authoring/Recommending was simply Based on The Nature of The Offense & Not on Any Evidence That was shown To Link plaintiff To The possession of The metal Rod or shown That plaintiff Lied To staff, so in essence He found plaintiff Guilty Just Because The officer Wrote Him up.

34. On The Second page of The final summary Report (exhibit-d) Defendant Best spoke with (3) witnesses That plaintiff Requested Be called To prove That He didn't do what The disciplinary Ticket Accused Him of. Dening plaintiff A fair And impartial Adjustment committee Hearing Under Apm code 504DR.

35. plaintiff's Witnesses All stated That They Heard scraping In The cell of plaintiff while Internal Affairs Department/unit was shaking Down His cell & These statements contradicted What Defendants I-A unit, milsap & Tejeda Wrote in Their Ticket & These statements showed That doubt exsisted As To plaintiff's Guilt.

36. Defendant Best didn't Take The statements of The witnesses into Account in The decision of if plaintiff was Guilty or Not. He Just Took The fact That Defendants I-A unit, milsap & Tejeda Wrote plaintiff A Ticket & He Took Their Word even Though They didn't Have A shread of evidence That pointed To Him Being

9.

Guilty of the charges that Defendants I-A unit, Milsap & Tejeda wrote him up for.

37. Plaintiff alerted Defendant Best that he was taking psych medication for stress & that his illness for what he takes the meds for, flared up & caused him to fail the Voice stress Analyzer-Polygraph test. Defendant Best didn't take this into account nor did he investigate this possibility in Plaintiff's Defense.

38. Four inmates were initially placed under investigation for having the metal rod only two of the four inmates were given the Polygraph, which shows that the incident wasn't thoroughly investigated in an effort to sustantiate Plaintiff's guilt or Innocence which is what Defendants were suppose to do when they placed him under investigation status.

39. Plaintiff wrote an emergency grievance on 5/14/13 which was within the 60 day time frame deadline & he sent it to Warden Lemke (Defendant).

40. Plaintiff's emergency grievance was sent to the grievance officer who stamped the grievance 5/17/2013 & gave it the grievance number #1517 & from there it was sent to Defendant

10.

Lemke, who signed off on this grievance on 5/23/2013 saying that he didn't think this issue was an emergency.

41. Plaintiff was advised to send his emergency grievance to the Counselor by Warden Lemke & that was not what he was suppose to do, Defendant Lemke misled Plaintiff into sending his grievance to the Counselor who held onto it for 2 months before answering it making him miss his 30 day deadline to appeal the decision by Defendant Warden Lemke. In Violation of his due process under Adm. Code 504 DP.

42. Plaintiff can only appeal the decision of Warden Lemke to Deny his grievance as an emergency by sending it to Director Godinez within 30 days after Lemke signs it & Defendant Lemke knew this but he deliberately misled Plaintiff into missing his filing deadline.

43. Plaintiff got his grievance back from the Counselor after it was held 2 months & he sent/forwarded it to the Grievance officer - Anna McBee (Defendant) who gave it a second grievance number # 2484.

11.

44. The grievance officers job is to make sure that the rules were observed in ~~THE~~ how the hearing committee conducted its hearing.

45. Plaintiff alerted defendant McBee (the grievance officer) to how he had been in investigation status for 30 days & then (3) days after the deadline to write a write up on the incident he was written up in direct violation of the rules pertaining to investigation status... & defendant McBee did nothing.

46. McBee states in her response "Grievance officer" finds that disciplinary report was reviewed & determined by the adjustment committee that they are reasonably satisfied of the offenders guilt. The adjustment committee said their basis for finding plaintiff guilty: the adjustment committee therefore reasonably finds the offender guilty of the offenses as described by the reporting investigator... nature of offense. (Exhibit-C) There's nothing in the adjustment committee's decision that says they found plaintiff guilty beyond a reasonable doubt or because of the evidence that was presented. He (plaintiff) was found guilty because he was written up. Defendant McBee didn't do her job to protect plaintiffs due process rights.

12.

47. McBee states, As the Grievance officer she cannot substantiate the incident occurred any other way than reported. No evidence linked plaintiff to having the metal rod in his possession nor showed that he lied or gave false information to an employee, so how could plaintiff's guilt be substantiated when the adjustment committee chair person has stated that the reason for his decision to find plaintiff guilty was solely based on "the offenses as described by the reporting investigator."

48. Defendant McBee has an obligation to correct due process & procedural violations that occured when plaintiffs disciplinary ticket was heard but she turned a blind eye to the violations that occurred during plaintiff's hearing & investigation status.

49. Plaintiff was sent his grievance back along with the grievance officers report 8/30/13 & he signed it & sent it to the administrative review board on 9/6/13 well within the 30 days that he has to appeal the grievance officers response.

13.

50. Defendant Sherry Benton stated on the Administrative Review Board Return of Grievance or Correspondence form that they received plaintiff's grievance on 9/23/13. Plaintiff sent it on 9/6/13. So it was sent ~~within~~ within the 30 day deadline that he has to appeal the grievance officer response. (Exhibit-H)

51. On this form defendant Benton states plaintiff had not submitted the grievance in a timely fashion & that this issue will not be addressed any further, because the grievance allegedly was filed over 60 days from date of ticket, from date of summary given & from when Chief Administrative officer received as an non-emergency. (Exhibit-H)

52. (Exhibit-E) plaintiff's grievance was written on 5/14/13 before the 60 day timeline that plaintiff has to write an grievance per the rule book. Plaintiff's grievance was stamped 5/17/13 by the grievance officer & then it was signed by Warden Lemke on 5/23/13. Plaintiff's right's are protected by the first amendment of the united states constitution under to color of law.

53. To confirm the chain of events plaintiff wrote a letter to Counselor Mansfield (Exhibit-G)

14.

54. THE GRIEVANCE (EXHIBIT-E) WAS SENT BACK TO PLAINTIFF
: & HE WAS TOLD TO SEND IT TO THE COUNSELOR & THIS WAS NOT
WHAT WAS SUPPOSE TO HAPPEN. THE GRIEVANCE OFFICER SHOULD
HAVE RESPONDED TO PLAINTIFFS GRIEVANCE BUT DEFENDANT MCBEE
CHOSE TO IGNORE THE PROCESS & BY DEFENDANTS DELIBERATELY MISLEADING
PLAINTIFF AS HE ATTEMPTED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.
THIS IS A DELIBERATE DESIGN BY THE DEFENDANTS TO CONFUSE PLAINTIFF
& ANY OTHER INMATES WHEN THEY ATTEMPT TO EXHAUST THEIR GRIEVANCES
& GET A RESOLUTION TO THEIR ISSUES & DEFENDANT GODINEZ THE DIRECTOR
KNOWS THAT THIS PROBLEM EXSISTS & WILL NOT DO ANYTHING TO FIX IT.
THIS VIOLATE'S PLAINTIFFS FIRST AMENDMENT ACCESS TO THE COURTS.

55. DEFENDANTS FOUND PLAINTIFF GUILTY WITHOUT ANY EVIDENCE, WITHOUT
A WITNESS OR A CONFESSION TO THE INCIDENT THAT HE WAS WRITTEN A TICKET
FOR & AS HIS PUNISHMENT HE WAS GIVEN 6 MONTHS C GRADE, 6 MONTHS
SEGREGATION & 6 MONTHS COMMISSARY RESTRICTION. (EXHIBIT-C)

56. (EXHIBIT-F) THE GRIEVANCE OFFICER - DEFENDANT MCBEE STATES IN
HER RESPONSE "DISCIPLINARY REPORT (DR) UPHELD, DISCIPLINARY SANCTIONS
& PROCEDURES IMPOSED ARE WITHIN MAX CAPACITY" BUT DEFENDANT GODINEZ
ISSUED AN ORDER/DIRECTIVE THAT IMPOSED AN EXTENDED PUNISHMENT
ON TO PLAINTIFF'S SENTENCE THAT THE ADJUSTMENT COMMITTEE GAVE HIM.
VIOLATE'S PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENTS
OF THE UNITED STATES CONSTITUTION.

15.

57. With the charges of Dangerous contraband & giving false information to an employee the rule book is clear as to what punishment can be imposed on plaintiff or any inmate who is found guilty of those charges, But Defendant Godinez has implemented a rule that has given plaintiff an extended sentence/punishment that wasn't made aware to him before he heard his ticket. The new rule punishes plaintiff twice or two seperate occassions for the same alleged disciplinary ticket. Violate's cruel and unusual punishment under the eighth and fourteenth amendments of united states constitution,

58. Plaintiff was punished by the Adjustment Committee: 6 months C-Grade, 6 months segregation, & 6 months commissary Restriction.

59. Plaintiff served the punishment for the Adjustment Committee but then per Director Godinez plaintiff has to serve another punishment: 2 years in stripe uniform, commissary Restriction 2 years, 2 year visit Restriction, 2 year Job Ban, school Ban, class Ban & Restricted movement. this is in violation of his due process Rights. AND DENYING US TO PRACTICE OUR RELIGION. Violates plaintiff first and fourteenth amendments of united states constitution,

60. Plaintiff was found guilty of the disciplinary ticket in violation of his due process Rights & now he's Receiving a second punishment as a direct result of the rule that Defendant Godinez implemented to deliberately subject inmates like plaintiff

16.

To AN EVEN HARSHER PUNISHMENT THAN THE COURTS HAVE DESIGNED for PLAINTIFF TO BE SUBJECTED TO, SEE EXHIBIT(I) THERE IS NO WHERE IN IDOC ADMINISTRATIVE CODE WHERE INMATE'S ARE SUBJECT TO THIS ADDITION PUNISHMENT.

61. DEFENDANTS ALL PLAYED A PART IN VIOLATING PLAINTIFFS DUE PROCESS RIGHTS TO fIND HIM GUILTY OF A DISCIPLINARY TICKET & THEN TO SUBJECT HIM TO EXTRA PUNISHMENT AS A DIRECT RESULT OF DUE PROCESS VIOLATIONS CAUSED BY THE DEFENDANTS.

62. AS A DIRECT RESULT OF HIS DUE PROCESS RIGHTS BEING VIOLATED PLAINTIFF WAS fORCED TO SUFFER UNNECESSARILY MORE THAN EVERYDAY PRISON LIFE, HIS INCARCERATION BECAME HARSHER THAN NORMAL PRISON LIFE. VIOLATES PLAINTIFF EIGHTH AND fOURTEENTH AMENDMENTS OF UNITED STATES CONSTITUTION.

17.

V. RELIEF:

PLAINTIFF WANTS TO SUE EACH DEFENDANT IN THEIR OFFICIAL & INDIVIDUAL CAPACITY. HE WANTS THE DUE PROCESS VIOLATIONS THAT HE'S ENDURED TO BE CORRECTED & THE DISCIPLINARY TICKET EXPUNGED FROM HIS RECORD & HE BE TAKEN OUT OF THE STRIPE SUIT PUNISHMENT HE WANTS TO BE COMPENSATED FINANCIALLY FOR THE AMOUNT OF $200,000 FOR THE DUE PROCESS VIOLATIONS.

VI. PLAINTIFF DEMANDS A TRIAL BY JURY ☑ YES

SIGNED THIS __19__ DAY OF __MARCH__ 2015

X _Omar Aguilar_
       SIGNATURE

_OMAR AGUILAR #M-20779_

STATEVILLE CORRECTIONAL CENTER
P.O BOX 112
JOLIET, IL, 60434-0112

18.

(EXHIBIT A)

Case: 1:15-cv-02952 Document #: 1 Filed: 04/01/15 Page 22 of 41 PageID #:68

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender Disciplinary Report**

Date: 2-15-13

**Type of Report:**
☐ Disciplinary ☒ Investigative

STATEVILLE CC
Facility

Offender Name: AGUILAR, OMAR     ID #: M20779

Observation Date: 2-15-13  Approximate Time: 130 ☐ a.m. ☒ p.m.  Location: INVESTIGATORS UNIT

**Offense(s): DR 504:** 610- INVESTIGATIVE STATUS

**Observation:** (NOTE: Each offense identified above must be substantiated.) ON THE ABOVE DATE AND APPRAXIMATE TIME OFFENDER AGUILAR, OMAR M20779 IS BEING PLACED UNDER INVESTIGATIVE STATUS.

**Witness(es):**
☐ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| Reporting Employee (Print Name) | Badge # | Signature | Date | Time |
|---|---|---|---|---|
| C. MILLER | 5195 | C. M | 2-15-13 | 135 ☐ a.m. ☒ p.m. |

---

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement  ☒ Investigative Status  Reasons:

Mark K. Casley  713     2-15-13
Printed Name and Badge #     Shift Supervisor's Signature (For Transition Centers, Chief Administrative Officer)  Date

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer  Comment:

☐ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ **Minor Infraction,** submitted to Program Unit

Mr. Anderson  714   2/16/13
Print Reviewing Officer's Name and Badge #  Reviewing Officer's Signature  Date

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only)

Print Hearing Investigator's Name and Badge #  Hearing Investigator's Signature  Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**
You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if offender refused to sign

O. Jackson   Offender's Signature   ID#
Serving Employee (Print Name)  5252  Badge #  1158  Signature

2/16/13   1155   ☐ a.m. ☐ p.m.
Date Served   Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offender's Signature   ID#

RECEIVED
SEP 23 2013
Office Of Inmate Issues

---

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

Date of Disciplinary Report   Print offender's name   ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

Print Name of witness   Witness badge or ID#   Assigned Cell (if applicable)   Title (if applicable)
Witness can testify to:

Print Name of witness   Witness badge or ID#   Assigned Cell (if applicable)   Title (if applicable)
Witness can testify to:

(EXHIBIT A)

Page ___ of ___
Printed on Recycled Paper

Distribution: Master File, Offender, Facility (2)   DOC 0317 (Rev. 2/2007)

(EXHIBIT-B)

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Report**

Stateville CC
Facility

Date: 3/18/2013

**Type of Report:**
☒ Disciplinary  ☐ Investigative

Offender Name:  AGUILAR, OMAR

ID #:  M20779

---

**Offense Information:**

Observation Date:  3/18/2013   Approximate Time:  12:45  ☐ a.m. ☒ p.m.   Location:  SCC Intelligence Unit

**Offense(s): DR 504:**   104: Dangerous Contraband; 303: Giving False Information to an Employee

**Observation:** This IDR replaces the investigative status report issued to inmate AGUILAR, OMAR M20779 on 2/15/2013. On 2/15/2013 the Stateville CC Investigations Unit conducted a routine search of the plumber's access area (also known as the pipe chase area) which is located in between the quarter units (B, C, D, and E living unit, STA). During this search an 8 ½ inch metal rod was found between cells E-711 and B-811. This metal rod was sharpened to a point on one end therefore the SCC Investigations Unit deemed this metal rod to be a homemade weapon (or commonly referred to as a "shank"). According to the Offender Tracking System (OTS), AGUILAR was identified as one of four inmates living in the mentioned cells. According to OTS, AGUILAR was identified as being celled in B-811 at the time of this search. Following the search, AGUILAR was escorted to the Investigations Unit to be interviewed about the homemade weapon.------------------------continued on page 2------------------------

**Witness(es):**

☒ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| R. Tejeda | 2816 | | 3/18/2013 | 2:20 ☐ a.m. ☒ p.m. |
|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time |

---

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement  ☐ Investigative Status   Reasons:

J McCarthy  S43                    3/19/13
Printed Name and Badge #    Shift Supervisor's Signature (For Transition Centers, Chief Administrative Officer)    Date

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer   Comment:

☒ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ **Minor Infraction,** submitted to Program Unit

Marvin K. Lasker 713         3-19-13
Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

M Lange 2782         3-19-13
Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**
You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☒ Check if offender refused to sign        Offender's Signature  2782   ID#

M. Lange
Serving Employee (Print Name)   Badge # 83   Signature ☐ a.m. ☒ p.m.

3-24-13
Date Served   Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offender's Signature        ID#

---

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

RECEIVED
SEP 2 3 2013
Office Of ...

Date of Disciplinary Report   Print offender's name        ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

B812 (Both occupants)
Print Name of witness   Witness badge or ID#   Assigned Cell (if applicable)   Title (if applicable)

Witness can testify to: They have metal to make...

B811 (Hispanic occupant)
Print Name of witness   Witness badge or ID#   Assigned Cell (if applicable)   Title (if applicable)

Witness can testify to: Same as above

(Exhibit) B1

Distribution: Master File        DOC 0317 (Rev. 2/2007)



(EXHIBIT-B)

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Continuation Page**

_____Stateville C.C._____
Facility

☒ Disciplinary Report  ☐ Investigative Report  ☐ Disciplinary Summary  ☐ Adjustment Committee Summary

Report/Incident Date: __3/18/2013_____    Incident # (if applicable): _____

| Offender Information: | |
|---|---|
| Offender Name: __AGUILAR, OMAR_____ | ID #: __M20779_____ |

Use the space below to provide any additional information.

Prior to conducting the interviews with AGUILAR, a cell search was conducted in B-811. The Investigations Unit discovered groove and scratch marks from an item being sharpened on the bottom metal bunk.  During the interview, AGUILAR stated he was assigned to the bottom bunk in cell B-811. During his interview, AGUILAR stated the grooves and scratch marks on the bottom bunk where there when AGUILAR moved in the cell. AGUILAR denied that the metal sharpened rod (homemade weapon) was his.

AGUILAR agreed and signed to take a VSA (Voice Stress Analyzer test aka polygraph test) to his statement.

On 3/14/2013 AGUILAR was administered a VSA. During this VSA AGUILAR was asked the following questions (AGUILAR'S answer and the VSA result are noted after each questions asked) :

1. Did you see Reese (AGUILAR'S cellmate at the time) sharpening the shank? AGUILAR replied  "NO" and test concluded AGUILAR to be Truthful
2. Did you sharpen the shank on the bed? AGUILAR replied  "NO" and test concluded AGUILAR to be Truthful
3. Did you place the shank in the pipe chase? AGUILAR replied "NO" and the test concluded AGUILAR to be DECEPTIVE
4. Was the shank yours? AGUILAR replied "NO" and the test concluded AGUILAR to be DECEPTIVE

Due to AGUILAR'S VSA results concluding that AGUILAR was being deceptive on questions 3 and 4 of the VSA test, this R/I has substantiated that AGUILAR violated the following DR 504 offenses:

104: Dangerous Contraband and 303: Giving False Information to an Employee.

AGUILAR, OMAR M20779 was identified via the IDOC Institutional Graphics database.

RECEIVED

SEP 2 3 2013

Office Of Inmate Issues

Page __2__ of ___2   (EXHibit B2)

(EXHIBIT C)

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

**Name:** AGUILAR, OMAR          **IDOC Number:** M20779          **Race:** HSP

**Hearing Date/Time:** 3/29/2013   09:54 AM      **Living Unit:** STA-F-01-27      **Orientation Status:** N/A

**Incident Number:** 201300881/1 - STA      **Status:** Final

## BASIS FOR DECISION

R/I reflects this IDR replaces the investigative status report issued to inmate Aguilar M20779 on 2/15/13. On 2/15/13 the Stateville CC investigation Unit conducted a routine search of the plumber`s access area(also known as the pip chase)which is located in between the quarter units(B,C,D and E living unit). During the search an 8 1/2 inch metal rod was found between cells E-711 and B-811. Metal rod was sharpened to a point on one end and was deemed to be a homemade weapon. According to OTS Aguilar was identified as being in cell B-811 at the time of the search. A cell search was conducted in B-811 an grooves and scratch marks from an item being sharpened on the bottom bunk were discovered. During the interview inmate Aguilar M20779 stated he was assigned to the bottom bunk in cell B-811. Aguilar M20779 states the grooves and scratches where there when he moved in the cell and denied the metal sharpening was his. An administered voice stress analyzer test (commonly referred to as a polygraph), concluded that Aguilar was deceptive when he answered "no" to the question "did you place the sank in the pipe chase?" It also concluded that he was deceptive when he answered "no" to the question "was the shank yours?" The Adjustment Committee therefore reasonably finds the offender guilty of the offenses as described by the reporting investigator.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 6 Months C Grade | 6 Months C Grade |
| 6 Months Segregation | 6 Months Segregation |
| 6 Months Commissary Restriction | 6 Months Commissary Restriction |

**Basis for Discipline:** NATURE OF OFFENSE

### Signatures
**Hearing Committee**

| | Signature | Date | Race |
|---|---|---|---|
| BEST, CHARLES F  - Chair Person | *C. Best* | 03/29/13 | BLK |
| GEORGE, BRENNA D | *B. George* | 03/29/13 | BLK |

Recommended Action Approved

## Final Comments: N/A

MICHAEL LEMKE / LKS  4/10/2013          *signature*          04/10/13

**Chief Administrative Officer**          **Signature**          **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

*signature*          4/15/13  8:55 am  *signature*

**Employee Serving Copy to Committed Person**          **When Served  - - Date and Time**

RECEIVED

SEP 2 3 2013

Office Of Inmate Issues

(EXHIBIT C2)

Run Date: 4/10/2013 14:21:29          Page 2 of 2

(EXHIBIT-D)

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** AGUILAR, OMAR     **IDOC Number:** M20779     **Race:** HSP

**Hearing Date/Time:** 3/29/2013   09:54 AM     **Living Unit:** STA-F-01-27     **Orientation Status:** N/A

**Incident Number:** 201300881/1 - STA     **Status:** Final

| Date | Ticket # | Incident Officer | Location | Time |
|------|----------|------------------|----------|------|
| 3/18/2013 | 201300881/1-STA | TEJEDA, RICARDO | INTERNAL AFFAIRS | 12:45 PM |

| Offense | Violation | Final Result |
|---------|-----------|--------------|
| 104 | Dangerous Contraband<br>*Comments:8.5 inch sharpened metal rod* | Guilty |
| 303 | Giving False Information To An Employee<br>*Comments:found deceptive by polygraph* | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status | |
|--------------|------------|--------------|----------------|--|
| Inmate | IDOC#: M28996 | NOA, ARIEL | Witness Was Called | Requested By Inmate |

**Statement:** When they went into (Offender Aguilar's cell, B House Cell 811) I heard some kind of metal scraping sound. It sounded like they were rubbing two pieces of metal together.

_____ C. Bat _____    I attest to the statements as being a correct reflection of the statements
Witness Interviewer Signature    provided to me by witnesses.

| Inmate | IDOC#: R48181 | TIMOTHY, RAYMOND | Witness Was Called | Requested By Inmate |
|--------|---------------|------------------|---------------------|---------------------|

**Statement:** Yeah, I heard metal to metal scraping sounds. It was I.A. doing something in (Offender Aguilar's Cell, B House Cell 811).

_____ C. Bat _____    I attest to the statements as being a correct reflection of the statements
Witness Interviewer Signature    provided to me by witnesses.

| Inmate | IDOC#: R71425 | VALENCIA, ALEXANDER | Witness Was Called | Requested By Inmate |
|--------|---------------|---------------------|---------------------|---------------------|

**Statement:** I heard something coming out of (Offender Aguilar's Cell, B House Cell 811) while I.A. was in there shaking down. I think they might have been scraping the bunk with something.

_____ C. Bat _____    I attest to the statements as being a correct reflection of the statements
Witness Interviewer Signature    provided to me by witnesses.

## RECORD OF PROCEEDINGS
Inmate Aguilar M20779 is present and IDR is read. Inmate Aguilar M20779 pleads not guilty. Inmate Aguilar M20779 states that his cellmate Brown had a polygraph too. Two guys in cell, did not take polygraph. I take stress medication and that may be an error.

RECEIVED

SEP 23 2013

Office Of Inmate Issues



(EXHIBIT-E)  F-134

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 5/14/13 | Offender: (Please Print) OMAR AGUILAR | ID#: M20779 |
|---|---|---|

| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [✓] Staff Conduct
- [ ] Transfer Denial by Facility
- [✓] Disciplinary Report: 3/18/13
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator

Date of Report

- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [✓] Other (specify)

Stateville C.C.
Facility where issued

MAY 17 2013

15 VIOLATION OF RIGHTS NO PROCEDURAL RULES PER 504.

GRIEVANCE OFFICE

Note:  Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

AUG 16 2013

STA# 2484

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): ON 2-15-13 I WAS PLACED ON INVESTIGATIVE STATUS ALONG WITH MY CELLY BROWN, MAURICE and 2 OTHER INMATES (SEE EXHIBIT A). REASON being is STATEVILLE C.C. INVESTIGATION Unit conducted a ROUTINE SEARCH OF THE NON-ACCESSIBLE FOR INMATES, ACCESS AREA (ALSO KNOWN AS THE PIPE CHASE) WHICH is LOCATED in between THE QUARTER UNITS AND found A METAL ROD BETWEEN CELLS E-711 AND B-811. I WAS IN CELL B-811 ALONG WITH MY CELLY AND OTHER 2 INMATES WERE IN CELL E-711. ON 3-14-13 I AGREED TO TAKE A VSA TEST AND OUT OF FOUR QUESTIONS, 2 CAME BACK AS TRUTHFUL AND OTHER 2

**Relief Requested:** I REQUEST THAT I BE LET OUT OF SEGREGATION (IF I'M STILL IN SEGREGATION). THAT TICKETS DATED 2-15-13 AND 3-18-15 BOTH BE EXPUNGED FROM MY RECORD AND THAT I RECEIVE.....

- [ ] Check only if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| X Omar Aguilar | M20779 | 5/14/13 |
|---|---|---|
| Offender's Signature | ID# | Date |

over (continue)

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

| Date Received: 7/19/13 | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

**Response:** Disciplinary report attached. Send to grievance Office for review.

RECEIVED

SEP 23 2013

Office Of Inmate Issues

| Alex Hall | Alex Hall | 7/22/13 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

### EMERGENCY REVIEW

| Date Received: 5/23/13 | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance  [✓] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Michael Lenke | 5/23/13 |
|---|---|
| Chief Administrative Officer's Signature | Date |

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

AS deceptive (see Exhibit B2). On 3-18-13 a Disciplinary Report was wrote up (see Exhibit B1 & B2). I was charged with 104: Dangerous Contraband; 303: Giving false Information to an Employee. I was served with Disciplinary Report on 3-24-13. From 2-15-13 thru 3-24-13 I remained in segregation while on 3-18-13 my celly along with other 2 inmates were let out of segregation. At Adjustment Committee I pled not guilty to the trumped-up charges. I also let them know about my mental condition and that I take prescribed medication and had taken said medication and was on said medication during the administration of the VSA test. I was found guilty soon there after (see Exhibit C1 & C2). I filed this grievance to report the violation of my constitutional rights in which I am protected from arbitrary or unfair abuses of power by prison officials and to report same officials of violating their own proce- dural requirements set forth in The Illinois Admi- nistrative Codes Title 20, Chapter I, subchapter e, part 504. The following 6 issues explain how said officials violated my rights and their own rules and procedures.

① Reporting Employee (C.M. Badge # 5195) did not comply with Rule 504.30 (e) of the Ill. Admn. Code Title 20, Chapter I, Subchapter e, part 504, subpart A (see Exhibit A). Therefore making ticket issued and dated 2-15-13 void, because I was not informed of why I was being put under investigation per rule 504.30 (e).

② I was held over the 30 day period an offender may be detained in investigative status per rule 504.50 (c)(3) of the Ill. Admn. Code Title 20, Chapter I, subchapter e, part 504, subpart A. I was put on Investigative Status on 2-15-13 (see Exhibit A) and remained there up until 3-18-13 when Disciplinary Report was wrote up (see Exhibit B1 & B2). This is a clear violation of Rule 504.50 (c)(3) and as well as Rule 504.50 (c)(7). Therefore Disciplinary Report dated 3-18-13 is invalid and void and should be expunged from my record for not being wrote up during the 30 day mandate set in Rule 504.50 (c)(3). And for not (the Chief Administrative Officer) personally authorizing in writing an extension of

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

AN additional 30 days placement in confinement as set forth in Rule 504.50 (c)(7). so that I would continue to remain in segregation as I did without a Diciplinary Report to justify confinement.

③ I should of never been allowed to take VSA test due to my mental condition and to the fact that I take daily medication and was on having taken said medications for said condition under the care of a psychiatrist which can be verified and by pharmacy. I take Depakote and Zoloft. I have moodswings and suffer from depression and alot of stress and anxiety amongst other reasons why said VSA test results are not reliable and results thereof.

④ I was not afforded the opportunity to present my views as dictated by Rule 504.50 (c).

⑤ There was no shakedown slip nor chain of custody done nor ever to tie purported contraband to me, attached to Diciplinary Report dated 3-18-13. As it should have been. All contraband found should be written up and to establish the proper chain of custody of contraband found. As set forth in the Illinois Department of Corrections Administrative Directive number 05.01.111 (2)(D)(b)(i)(a-e). This violation is cause for ticket being expunged from my record because there is no proof of what was found only a description.

⑥ According to Rule 504.80 (j)(1 & 2) Adjustment Committee can not only go off VSA test results. A VSA test that shows you being deceptive is not evidence that you are guilty of the disciplinary charge. This can be a direct result caused by the medication I take and took prior to taking VSA test. My witnesses all told same thing (see Exhibit C1). They all heard noise coming out of my cell while I.A. conducted search of my cell. There's no evidence to reasonably satisfy that I committed the offense I was found guilty of.

✳ Continue from Page 1:

Relief Requested: Any compensation afforded to me.

GRIEVANCE OFFICER

STA# 2486

RECEIVED
SEP 23 2013
Office of Inmate Issues

(EXHIBIT-F)

F134

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

### Grievance Officer's Report

**Date Received:** 8/16/13  We @ 60 days  **Date of Review:** 8/26/13   **Grievance #** (optional): 2484

**Committed Person: Omar Aguilar**   ID#: M20779

**Nature of Grievance:** DR – 201300881/1-STA

**Facts Reviewed:** Grievant was issued a DR for 104 and 303 on 3/18/13 and was found guilty and received six months each c grade, segregation and commissary restriction. He wants the disciplinary report expunged.

Grievance Officer finds that DR was reviewed and determined by the Adjustment Committee that they are reasonably satisfied of the offender's guilt. Grievance Officer cannot substantiate the incident occurred any other way than reported.  DR upheld, disciplinary sanctions and procedures imposed are within max capacity.

**Recommendation:** Based upon a total review of all available information, it is recommended that grievance be DENIED.  Unable to substantiate this incident occurred any other way than reported.

**Anna McBee, CCII**
Print Grievance Officer's Name              Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

### Chief Administrative Officer's Response

**Date Received:** 8/30/13   ☑ I concur   ☐ I do not concur   ☐ Remand
**Comments:**

RECEIVED
SEP 2 3 2013
Office of Inmate Issues

Chief Administrative Officer's Signature                          Date  9/3/13

### Committed Person's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director.  I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Omar Aguilar
Committed Person's Signature      ID#  M-20779      Date  9-6-13

Distribution:   Master File; Committed Person              Page 1              DOC 0047 (Eff. 10/2001)
(Replaces DC 5657)
Printed on Recycled Paper

(EXHIBIT-G)

TO: MANSFIELD.

THIS IS OMAR AGUILAR ID# M-20779
I AM IN F-127. I AM SENDING YOU THIS
GRIEVANCE BECAUSE COUNSELOR HALL IS
NOT GOING TO TAKE CARE OF IT ON TIME
I HAVE A DEAD LINE FOR MAY 18. THIS
HAVES TO BE DONE SO I CAN GET OUT
OF SEG. PLEASE MANSFIELD TAKE CARE
OF THIS FOR ME AS SOON AS POSSIBLE.
WELL WHEN YOU RESPONSE SEND ME A
COPY SO I CAN HAVE AND THANK YOU
SO MUCH FOR EVERYTHING.


P.S. CAN YOU SEND ME                    SINCERLY
MY SEG OUT DATE AND                     Oman Aguilar
A ☺ AUDIT THANK YOU                     M-20779
                                        F-127. 5-15-13.

        5/16/13
Seg Release: 9-15-13

Your grievance was given to the Grievance Office
today.

        Counselor Mansfield .

RECEIVED

SEP 2 3 2013

Office Of Inmate Issues

(EXHIBIT-H)

F128

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
### Return of Grievance or Correspondence

Offender: _Aguilar_ _Omar_ _____ _M20779_
              Last Name          First Name        MI         ID#

Facility: _Stateville_

☒ Grievance: Facility Grievance # (if applicable) _2484_ Dated: _5/14/13_ or ☐ Correspondence: Dated: _____

Received: _9, 23, 13_  Regarding: _IDR 3/8/13, #2013 00 881-1-STA_
              Date                    _time frames to write, seg time_
                                      _Shakedown slip, Hearing_

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to: Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL 62706

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on ____/____/____.
                                                      Date

☐ No justification provided for additional consideration.

**Other (specify):** _filed over 60 days from date ticket rec'd, from_
_date summary given, and from when CAO retd as_
_non-emergency._

Completed by: _____ _Sherry Benton_ _4, 9, 14_
                 Print Name          Signature         Date

_the one dated 2/15/13 is an investigative ticket, not_
_a disciplinary ticket._

Distribution: Offender
              Inmate Issues

Printed on Recycled Paper

DOC 0070 (Rev.4/2013)

(EXHIBIT I)

F14

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: JAN 10TH, 2014 | Offender: (Please Print) OMAR AGUILAR | ID#: M-20779 |
|---|---|---|
| Present Facility: STATEVILLE C.C. | | Facility where grievance issue occurred: STATEVILLE C.C. |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [x] Other (specify): Unconstitutionally Subjected to double-Jeopardy By being twice-punished For the SAME-offense.
- [ ] Disciplinary Report: ___/___/___ Date of Report / Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON OR About 2-18-13 Grievant WAS Issued A Disciplinary Report For A Violation of Rule(s) (DR 504)(104-DANGErous Contraband -and- 303-Giving False INFormation To AN Employee), --Grievant pled "Not Guilty" but WAS Subsequently Adjudicated "Guilty" by The Adjustment Committee On 3-29-13 And Disciplinary punishment(s) were imposed in Accordance within The Guidelines of The Illinois Administrative Code, Being (6-Month C Grade/6-Months Segregation/6-Months Commissary Restriction) - These punishments were Finalized By (Warden Michael Lemke) (Continued On Back)

**Relief Requested:** Remove Grievant From This program, and Compensate Me For The Violation(s) of my Constitutional Rights and Hardships I've had to endure Based on "Double-Jeopardy" and Other Constitutional provisions

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Omar Aguilar / Offender's Signature / M-20779 / 1/10/14

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: 1/13/14
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: OFFENDER AGUILAR IS A NO TOOLS PARTICIPANT 3-15-13 - 3-15-15. WARDEN'S BULLETIN #2013-114 WEAPONS VIOLATORS/ STAFF ASSAULTER (Revised) APPLIES TO OFFENDER AGUILAR.

S. Miles / Print Counselor's Name / Counselor's Signature / 6/23/14 Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___
Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

___ Chief Administrative Officer's Signature / ___ Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

ON 4-10-13 (See Attached "Final Summary Report" - Exhibit-"A")
Grievant Successfully Completed his "Punishments" That
Were imposed By The Adjustment Committee And Finalized By (WARDEN
Michael Lemke), And Grievant WAS Restored To B-Grade on 10-29-13

(1) month Later, (WARDEN Michael Lemke) ON November 22,
2013 implements a "Weapons Violator/STAFF Assaulter OFFender
Orientation MANUAL) (See Attached Exhibit-"B") At The direction
OF IDOC (Director GODINEZ)

The purpose OF The (Weapon Violator/STAFF Assault program) is
designed AS A program For OFFenders who Are Found Guilty OF The
Following Department Rule 504 OFFense(s) AFTer The implementation OF
This program. (1) 100 - Violent Assault on Any person (STAFF Assaulter)

(2) 102 - Assaulting Any person

(3) 108 - Sexual Assault

(4) 601 - Aiding and Abetting, Solicitation, or Conspiracy to
Commit An Assault, Violent Assault, or Sexual Assault.

(5) 104 - DANgerous Contraband (Weapons Violator)

However, (WARDEN Michael Lemke) improperly and in Violation
OF Clearly established STATE And Federal Constitutional Rights Against
"Double-Jeopardy") and ("Equal Protection and Due process) Placed This
Grievant in This program Administering "Additional Punishments" And
hardships on him For OFFense(s) Already Adjudicated and punished
Prior to The Implementation OF this program, Thus, Clearly Violating
This Grievant's STATE And Federal Constitutional Rights.

(END OF GRIEVANCE)

SEE EXHIBIT A AND B

EXHIBIT (I-1)

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** AGUILAR, OMAR     **IDOC Number:** M20779     **Race:** HSP

**Hearing Date/Time:** 3/29/2013  09:54 AM     **Living Unit:** STA-F-01-27     **Orientation Status:** N/A

**Incident Number:** 201300881/1 - STA     **Status:** Final

## BASIS FOR DECISION

R/I reflects this IDR replaces the investigative status report issued to inmate Aguilar M20779 on 2/15/13. On 2/15/13 the Stateville CC investigation Unit conducted a routine search of the plumber`s access area(also known as the pip chase) which is located in between the quarter units(B,C,D and E living unit). During the search an 8 1/2 inch metal rod was found between cells E-711 and B-811. Metal rod was sharpened to a point on one end and was deemed to be a homemade weapon. According to OTS Aguilar was identified as being in cell B-811 at the time of the search. A cell search was conducted in B-811 an grooves and scratch marks from an item being sharpened on the bottom bunk were discovered. During the interview inmate Aguilar M20779 stated he was assigned to the bottom bunk in cell B-811. Aguilar M20779 states the grooves and scratches where there when he moved in the cell and denied the metal sharpening was his. An administered voice stress analyzer test (commonly referred to as a polygraph), concluded that Aguilar was deceptive when he answered "no" to the question "did you place the sank in the pipe chase?" It also concluded that he was deceptive when he answered "no" to the question "was the shank yours?" The Adjustment Committee therefore reasonably finds the offender guilty of the offenses as described by the reporting investigator.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 6 Months C Grade | 6 Months C Grade |
| 6 Months Segregation | 6 Months Segregation |
| 6 Months Commissary Restriction | 6 Months Commissary Restriction |

**Basis for Discipline:** NATURE OF OFFENSE

## Signatures
### Hearing Committee

| | Signature | Date | Race |
|---|---|---|---|
| BEST, CHARLES F  - Chair Person | *C Best* | 03/29/13 | BLK |
| GEORGE, BRENNA D | *[signature]* | 03/29/13 | BLK |

Recommended Action Approved

---

**Final Comments:** N/A

---

MICHAEL LEMKE / LKS  4/10/2013
**Chief Administrative Officer**

*[signature]*     04/10/13
**Signature**     **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

*N. Acık*     4/15/13   855 pm *[signature]*
**Employee Serving Copy to Committed Person**     **When Served  -- Date and Time**

( EXHIBIT "A" )

(EXHIBIT I-2) 1 OF 5

# ILLINOIS DEPARTMENT OF CORRECTIONS

## Stateville Correctional Center



## Weapons Violator/Staff Assaulter

## Offender Orientation Manual

## Michael Lemke, Warden

**November 22, 2013**

1.



EXHIBIT I-2 2 OF 5

## MESSAGE FROM THE WARDEN

The purpose of this manual is to acquaint offenders with the daily activities of the Weapons Violator/Staff Assaulter Housing Unit. Material has been provided to answer many of your questions concerning the appropriate individual to contact to participate in these programs and services. Any additional questions or concerns shall be addressed to the Unit Counselor.

Michael Lemke, Warden
Stateville Correctional Center

2

(EX I-2) 30 F S

## A.    Mission Statement

"The mission of the Department of Corrections is to protect the public from criminal offenders through a system of incarceration and supervision which securely segregates offenders from society, assures offenders of their constitutional rights and maintains programs to enhance the success of offenders' re-entry into society."

This orientation manual was designed to familiarize offenders with the Weapons Violator/Staff Assaulter Program. If you have any questions about any material presented, direct them to the counselor assigned to the Weapons Violator/Staff Assaulter Unit.

## B.    Departmental Goals

1.    Establish the necessary types of physical security and levels of supervision required for the control of individuals committed to the Illinois Department of Corrections.

2.    Be in compliance with all pertinent laws, rules and directives.

3.    Provide growth-promoting opportunities and alternatives to unlawful behavior.

4.    Provide an array of health care services and programs for recreation and self-enhancement.

## C.    Orientation

It is the policy of Stateville Correctional Center to provide each Weapon Violator/Staff Assault offender with a comprehensive orientation packet that shall inform him of all aspects of the institutions activities and will assist him in making a trouble-free and beneficial adjustment during his incarceration at the facility. This manual addresses procedures, programs, and services within the Weapon Violator/Staff Assault program. Each offender shall be required to sign a document indicating that he has received a copy of the Weapon Violator/Staff Assault Offender Orientation Manual.

(EX I-2) 4 of 5

## OFFENDER DESIGNATION

Staff Assaulter – Offenders may be designated as a Staff Assaulter if found guilty of the following Department Rule 504 Offense(s) and the victim is a staff member, contractual employee, official visitor, visitor, or volunteer:

      (1)  100 – Violent Assault on Any Person

      (2)  102 – Assaulting Any Person

      (3)  108 – Sexual Assault

      (4)  601 – Aiding and Abetting, Solicitation, or Conspiracy to commit an assault, violent assault, or sexual assault

Weapon Violator – Offenders may be designated as a Weapon Violator if found guilty of the following Department Rule 504 Offense(s):

      (1)  104 – Dangerous Contraband

## PROGRAM PLACEMENT

All offenders will be reviewed for placement into the program based on the criteria above. Initial placement will be or a two year period. Offenders will be reviewed by the staff/assault weapon violator committee every 90 days for continued placement into the program. Offenders exhibiting positive behavioral change can be identified by the committee for early release from the WV/SA program. After the initial 180 days of placement in the program an offender may submit a written request once every 90 days to the WV/SA committee for consideration to be removed from the program.

## IDENTIFICATION

Any offender who is determined to be a Weapon Violator and/or Staff Assaulter shall be issued an identification card with the Abbreviation WV on the front of the ID card and Weapon Violator written on the back of the ID card.

Any offender who is determined to be a Staff Assaulter shall be issued an identification card with the abbreviation SA on the front of the ID card and Staff Assaulter written on the back of the ID card.

Any offender who is determined to be a Weapon Violator and Staff Assaulter shall be issued an identification card with the abbreviation WV and SA on the front of the ID card and Weapon Violator/Staff Assaulter written on the back of the ID card.

## CLOTHING

Offenders identified as a Weapon Violator and/or Staff Assaulter shall be issued jumpsuits that have horizontal, alternating black and white stripes. The jumpsuit shall be worn as the outermost garment and shall be visible at all times the offender is out of their assigned cell. T-shirts worn by Weapon Violator and/or Staff Assaulter Offenders shall be white with a black vertical stripe running the length of the shirt.

Offenders who are issued Weapon Violator and/or Staff Assaulter clothing are prohibited from allowing any other offender to wear his/her assigned clothing.

Level E Offenders who are also identified as Weapon Violator, Staff Assaulter, or Weapon Violator/Staff assaulter shall be issued jumpsuits that have horizontal, alternating black and white stripes and have a

4

(Ex I-2) 5 of 5

vertical black stripe running the length of the sides of the jumpsuit. Level E Offenders will also be issued a green T-shirt that have a black strip running the length of the sides of the t-shirt.

Offenders shall be issued a state blue coat for use during inclement weather, which may be worn as the most outer garment. Level E Offenders that are also identified as WV/SA Offenders shall be issued a state blue coat with a horizontal green stripe running the length of the sides.

## WORK ASSIGNMENTS

Offenders identified as Weapon Violator and/or Staff Assaulter shall be prohibited from work assignments.

## MEALS

Weapon Violator and/or Staff Assaulter Offenders shall be provided breakfast and dinner meals in their cells. The WV/SA Offenders shall be given the opportunity to eat the lunchtime meal in an assigned dining room, segregated from other offenders.

## RECREATION

Weapon Violator and/or Staff Assaulter offenders will follow the same recreation schedule as general population however, recreation will be held on the small yards only. Weapon Violator and/or Staff Assaulter offenders shall recreate together, isolated from other offender populations.

## VISITS

Visits for those offenders designated as Weapon Violator and/or Staff Assaulter shall take place in a non-contact setting. Offenders who are designated as Weapon Violator and/or Staff Assaulter shall initially be limited to two, one hour visits per month, one of which may occur on a holiday or weekend. The Weapon Violator and/or Staff Assaulter committee may increase visiting privileges to three, one hour visits per month.

## LAW LIBRARY

Offenders designated as Weapon Violator and/or Staff Assaulter shall be allowed access to the law library in Accordance with DR430, Library Services and Legal Materials.

## COMMISSARY

Offenders shall be allowed to purchase hygiene items and clothing items as approved by the Chief Administrative Officer. Offenders shall be limited to one shop every 30 days with a $30.00 spending limit. Upon approval of the Weapon Violator and/or Staff Assaulter Committee and CAO, offenders may be approved for one shop every 30 days with a $40.00 spending limit.

## PROGRAMS

Offenders designated as Weapon Violator and/or Staff Assaulter shall not be allowed to participate in congregated religous services. WV and/or SA offender religious services shall be accessible through closed circuit television.

Educational services shall not be offered to those offenders designated as Weapon Violator and/or Staff Assaulter other than those deemed mandatory. Those educational services which are aimed toward offender behavioral modification may be authorized.

( EXHIBIT I-3 )

# Illinois
## Department of
# Corrections

**PAT QUINN**
Governor

**S.A. GODINEZ**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

Offender Name: _Aguilar, Omar_          Date: _12/16/14_

Register # _M20779_

Facility: _Stateville_

This is in response to your grievance received on _7/31/14_. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: _1/10/14_  Grievance Number: _1991_  Griev Loc: _Stateville_

- ○ Transfer denied by the Facility or Transfer Coordinator
- ○ Dietary _____
- ○ Personal Property _____
- ○ Mailroom/Publications _____
- ○ Assignment (job, cell) _____

- ○ Commissary _____
- ○ Trust Fund _____
- ○ Conditions (cell conditions, cleaning supplies)
- ○ Disciplinary Report dated _____
  Incident # _____
- ⊗ Other _Classification – weapons violator_

**Based on a review of all available information, this office has determined your grievance to be:**

- ○ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____
- ⊗ Denied, in accordance with DR504F, this is an administrative decision.
- ○ Denied, this office finds the issue was appropriately addressed by the facility Administration.
- ○ Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)
- ○ Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.
- ○ In addition, property items are to be disposed of in accordance with DR501C.

- ○ Denied as the facility is following the procedures outlined in DR525.
- ○ Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.
- ○ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.
- ○ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.
- ○ Denied as the security staff are following the established schedule for dispensing cleaning supplies to the offender when possible.

- ○ Other: _____

FOR THE BOARD: _Sarah Johnson_          CONCURRED: _S A Godinez_
Sarah Johnson                                           S.A. Godinez
Administrative Review Board                        Director  _TA_
CC:  Warden, _Stateville_ Correctional Center      _12/17/14_
_Omar Aguilar_ , Register No. _M20779_